No. 39,703

ALMA J. MURPHY, *Appellee*, v. CENTRAL KANSAS ELECTRIC COOPER-ATIVE ASSOCIATION, INC., a Corporation, *Appellant*.

(284 P. 2d 591)

Opinion filed June 11, 1955.

*Tudor W. Hampton*, of Great Bend, argued the cause, and *S. R. Blackburn*, and *Jerry M. Ward*, both of Great Bend, were with him on the brief for the appellant.

*Barton Carothers*, of Great Bend, and *Russ B. Anderson*, of McPherson,

argued the cause, and *Archie T. MacDonald,* of McPherson, was with them on the brief for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action by plaintiff to recover damages for the wrongful death of her husband. From an adverse judgment the defendant appeals.

In a preliminary way, and to clarify matters later discussed, we make the following statement of facts which were admitted by the pleadings filed or disclosed by the undisputed evidence.

The defendant corporation distributed electric energy produced at its power station located southeast of Great Bend. From its power plant south to the Arkansas river and thence south from the river the company had a line with three wires carrying electric energy at approximately 12,500 volts along the west side of a road to a pole commonly referred to in the record as the terminal pole, located not far from the south bank of the river. At this point the wires crossed the road to a pole on the east side of the road and about 150 feet south of the terminal pole. On other poles the wires were fastened to insulators placed on single crossarms, but on the terminal pole and the latter pole above mentioned double crossarms equipped with six insulators were installed and used. The petition alleged that some time prior to 5:20 P. M. on November 27, 1950, one of the wires became dislodged and hung suspended above the road. In the answer it was admitted that on November 27, 1950, one of the wires became dislodged and hung suspended across the road and it was alleged that shortly before the tragedy, the exact time being unknown, persons unknown shot the easternmost insulators from the terminal pole causing the wire to fall and become suspended. Undisputed evidence was that discharged cartridges were found to the south and east of the terminal pole and that broken pieces of insulators were found at the base of the pole, and that at its lowest point the suspended wire was three or four feet above the ground. The road mentioned was a little used township road which came to an end south of the river, and close to the road was a small pond. Some time during the day of November 28, 1950, one George Winn drove his car to the pond and in some manner came in contact with the suspended wire and was killed. Toward evening Mrs. Winn told the decedent Murphy of her husband's absence and about 5:45 P. M. (which any almanac discloses was over an hour after sunset on that day) Murphy drove

his truck to the pond and, while searching for Winn, came in contact with the suspended wire and was killed. To complete the story, about 8:00 P. M. of that day a deputy sheriff and the undersheriff went to the scene to investigate, and the undersheriff came in contact with the suspended wire and was killed.

At some undisclosed date but prior to October, 1952, plaintiff commenced her action against the defendant, and as the result of an adverse ruling on a motion to strike and to make more definite and certain she filed an amended petition, hereafter referred to as the petition, in which she alleged status of the parties, the factual situation as to poles and wires, and that her husband James W. Murphy, while investigating the disappearance of Winn, came in contact with the suspended wire causing his death. Two paragraphs of the petition are devoted to the alleged negligence of the defendant. In one it was charged that the defendant failed to maintain its wires across the road with a high degree of safety commensurate with a dangerous instrumentality, failed to secure the wires to the poles in such manner that they could not fall without interrupting the flow of electricity through them, failed to repair dislocation of the wires when they should have known of the dislocation, failed to maintain devices which would apprise them of any interruption of the flow of current, and failed to make reasonable inspection to discover defects. In another paragraph defendant was charged with negligence: 1. In stringing its wires on the terminal pole without dead-ending them; 2. In failing to secure the wire to the terminal pole in such manner it could not escape and fall to the ground either by dead-ending or by constructing in a "stack", which was defined, or by using clevis type insulators; 3. In failing to use insulators of a type wherein the groove through which the wires were drawn was not below the top of the pin to which the insulators were affixed, or by using clevis type insulators, or by using pins which would not bend under stress of wires being pulled around them; 4. In failing to use circuit breakers; 5. In failing to inspect and discover the dislocation of the wire from the terminal pole and to repair same before decedent came in contact with the wire; and 6. In failing to set poles closer together, in running the lines across the road without employing the highest degree of care and adequate safety measures and devices and in failing to construct and maintain the wires in accordance with good modern practices. Allegations as to decedent's age, earning capacity and next of kin need not be detailed.

So far as need be noticed here defendant denied it was negligent and alleged it maintained its transmission lines with the care required of it under the particular circumstances and that its entire equipment was designed, constructed, maintained and operated in conformity with the standards set up and used generally and particularly in the state of Kansas, that some time shortly before the death some person unknown to defendant, by means of firearms shot the easternmost insulators from the terminal pole, dislodging the easternmost wire and causing it to be suspended but not grounded and that such act was the proximate cause of decedent's coming into contact with the wire and that his death was not caused by any act of defendant and it was without fault, and it prayed plaintiff take nothing.

By way of reply, plaintiff denied all new matter in the answer and alleged that if the insulator was broken by firearms causing the wire to be dislodged such occurrence should have been foreseen and anticipated by the defendant for the reason breakage of insulators by the use of bullets and firearms was a common occurrence.

On the issues thus joined a trial was had by a jury which rendered a general verdict in favor of the plaintiff and answered special questions which need not be set forth.

Defendant's motion for a new trial was denied and it perfected its appeal to this court, specifying error in the matters hereafter discussed.

Appellant premises its contentions, later taken up in order, with the statement of two propositions.

The first is that the degree of care required of distributors of electricity is that degree which would be used by reasonable and prudent persons engaged in the industry, under like conditions and commensurate with the dangers involved and the practical operation of their plant, to guard against contingencies which can be reasonably foreseen and anticipated, and after directing attention to the rule as to care stated in *Railway Co. v. Gilbert*, 70 Kan. 261, 78 Pac. 807, and citing many cases where it has been followed, appellant quotes at length the rule stated in 18 Am. Jur. 443, and set forth and followed in *Jackson v. Kansas Gas & Electric Co.*, 152 Kan. 90, 102 P. 2d 1038, stressing parts thereof that the general rule is that those distributing electricity are bound to use reasonable care in the construction and maintenance of their lines—that is such care as a reasonable man would use under the circumstances—and are respon-

sible for any conduct falling short of this standard; that the degree of care which will satisfy the requirement varies with the danger which will be incurred by negligence and must be commensurate with the danger; that the law imposes upon the distributor the duty of exercising the utmost care and prudence consistent with the practical operation of his plant to prevent injury, and the law is complied with when the distributor has provided such protection as will safely guard against any contingency that is reasonably to be anticipated, and that he is not legally bound to safeguard against occurrences that cannot be reasonably expected or contemplated.

The second proposition is that negligence of the distributor cannot be established by showing an injury might have been prevented by the use of some device or precaution not yet generally adopted in the industry, where the distributor has acted in accord with the established custom and practices, and he is not to be held to a degree of care higher than that which on the average is exercised in the business, and the use by the distributor of methods and appliances customarily used in the business exonerates him of negligence, and quoting at length from 38 Am. Jur. 681, 682, where the subject is treated, appellant states the test of negligence is not whether safer devices are in existence, but whether the devices it used are those in customary use by others in like business.

With respect to the first proposition appellee directs attention to *Snyder v. Light Co.*, 98 Kan. 157, 157 Pac. 442; *Stone v. City of Pleasanton*, 115 Kan. 378, 223 Pac. 312; *Zumbrun v. City of Osawatomie*, 135 Kan. 26, 10 P. 2d 3, and *Worley v. Kansas Electric Power Co.*, 138 Kan. 69, 23 P. 2d 494, as holding generally that those engaged in transmitting such a dangerous force as electricity are required to exercise a degree of care in constructing and maintaining the wires over which it is transmitted commensurate with the danger to be apprehended from contact with such wires or the escape of electricity therefrom, but they are not insurers against accidents or injuries. With respect to the second proposition, appellee directs attention to 18 Am. Jur. 446, where, among other things, it is said that conformity to customary practices of those engaged in supplying electrical current is not usually regarded as in itself a defense to a charge of negligence (Sec. 50), and that in selecting and installing its appliances, an electric company must use that degree of care which prudent men engaged in the same line of industry would use under similar circumstances, and must install such instruments

as the experience of men so engaged has shown to be reasonable under the circumstances, and further that they are bound to a supervision and diligence proportionate to the peculiar character and danger of the commodity in which they deal. Appellee stresses the statement "Every reasonable effort must be made to adopt and use all proper means readily obtainable and known to science for the prevention of accidents." Other parts of the section will not be reviewed here. (Sec. 51)

For present purposes and in a summary and not exhaustive manner, it may be said that our cases recognize that a high degree of care is required in the furnishing and distributing of electricity, and where wires are used to convey it across streets and roads the care exercised in installation and maintenance must be commensurate with the danger and provide such protection as will safely guard against any contingency that is reasonably to be anticipated; that a distributor of electricity has complied when he so maintains his distribution system and is not bound to safeguard against occurrences which cannot reasonably be expected or contemplated. It may be further observed that in determining whether the distributor has met the degree of care required is not that safer devices and equipment than were used are in existence, and it is proper to take into consideration the use by the distributor of methods, appliances and equipment customarily used in the industry, but such use of customary methods, appliances and equipment is not, in and of itself, a complete defense but may be shown as demonstrating that the distributor used that degree of care which prudent men engaged in the industry would use under similar circumstances. If by reason of circumstances as to location or other facts leading to the necessity for greater care than would ordinarily be required, the distributor must make reasonable effort to adopt such appliances, methods and equipment as are commensurate with the increased hazard.

Appellant makes two general contentions, one that the trial court erred in overruling its demurrer to the appellee's evidence, the other that the trial court erred in denying its motion for a new trial.

The gist of appellant's contention that the trial court erred in overruling its demurrer to the appellee's evidence is predicated on its statement that all of that evidence showed only that safer methods of construction and maintenance could have been used and was therefore insufficient; that some of the evidence pertained

to matters beyond the allegations of the petition and reply, and that there was no evidence that the construction and maintenance methods followed by it were not those generally recognized and used under like conditions in the industry. The matters of competency and materiality of the evidence are discussed in connection with the ruling on the motion for a new trial. If that evidence be excluded, however, there was other evidence tending to show that the methods followed by appellant were not safe; that the type of insulators used, and the attachment of the wire to them, was such that if the insulators broke nothing prevented the wire from going over the top of the pin supporting the insulators and off the end of the crossarm on which the insulators were placed, and then sagging or falling to the ground; that the insulators had been destroyed by the use of firearms, and that it was a common occurrence for insulators to be shot. We are not presently concerned with the credibility of the witnesses who so testified, nor with the fact that cross-examination may have weakened their testimony. Under familiar rules for considering evidence when attacked by demurrer, we think it may not be said the trial court erred.

Appellant contends that it was entitled to a new trial by reason of claimed errors which will be noticed insofar as deemed necessary.

Appellant first contends the trial court erred in admitting evidence as to matters outside the scope of the pleadings. It may be conceded that witnesses were permitted to testify that an "H" type of construction, at least not specifically mentioned in the pleadings, would have prevented the wire from falling away from the terminal pole and sagging across the roadway. Had the objection to this evidence been on the ground now relied upon, it might have been good, a matter not necessary to decide. The objection actually made was that the evidence was incompetent, irrelevant and immaterial and "not stating the true rule applicable in this case." The evidence was not inadmissible for the reasons advanced at the trial.

Under separate headings appellant contends the trial court erred in the admission of evidence offered by the appellee as not being proper as a test of negligence and in refusing to permit it to cross-examine appellee's witnesses with respect thereto and with respect to customary standards as applied to the facts shown. Appellant's complaint there was error in the exclusion of evidence offered by it will not be discussed as there is no showing of compliance with

G. S. 1949, 60-3004, dealing with production of excluded evidence on the hearing of a motion for a new trial.

The abstracts of the record contain many pages of the direct and cross-examination of appellee's witnesses and the objections made by the parties. This record has been carefully examined, but limits of space preclude any quotation of question, objection and answer, or refusal of it. After a showing that bell type insulators were used and that the places where the wires were attached to them were higher than the top of the pins holding the insulators and that if the insulators were destroyed nothing prevented the wires from going off of and over the ends of the crossarms and falling or sagging, witnesses were asked if there were safer methods of construction that would have prevented such a result. The form of the question should more properly have been as to what other methods and devices were used and accepted in the industry. But passing that, in answer to the questions propounded a mass of evidence was produced on direct examination as to other methods and devices with little regard to the degree of care which prudent men engaged in the industry would exercise and in which witnesses were permitted to express opinions as to comparative safety. However, on cross-examination of the witnesses so testifying, the trial court repeatedly sustained objections to questions tending to show the witnesses' knowledge of the type of construction generally and customarily followed in the state of Kansas and whether it was in compliance with the requirements of the National Electrical Safety Code, the safety rules of the Rural Electrification Administration and the Kansas Corporation Commission. While in a sense a showing of compliance with these codes and rules may be said to be such that it should be shown in defense, it was highly important that the testimony of appellee's witnesses be subjected to cross-examination to test the soundness of the witnesses' statements. This is of particular importance when the evidence offered by appellant is examined for there objection was sustained to questions calling for answers as to customary practices and usages in construction, and particularly with reference to the type of insulators used on the ground there had been no evidence by appellee with respect to the latter. It may be observed the type of insulators used had been shown and constituted an essential part of appellee's proof. In our opinion the cross-examination was so unduly restricted a fair trial did not result.

Appellant also complains of testimony as to the destruction of the insulators by shooting. We shall devote little time to the objection. It is true it was stipulated the insulators were shot off the poles and that that caused the wire to fall, but that did not preclude the appellee from showing, as it did, that shooting of insulators was a common practice. The fact some of the testimony was weakened by cross-examination went only to its weight and not to its competency.

In view of the fact a new trial is ordered, we shall not comment on complaints of appellant that the trial judge participated unduly in the trial by excluding evidence to which no objection had been lodged and by suggesting, in the presence of the jury, procedure to be followed by the appellee. At another trial there may be no occasion for such complaints.

Having carefully considered the record, we are satisfied a fair trial was not had. The judgment of the trial court is reversed and the cause remanded for a new trial.