No. 46,866

WILLIAM F. ADAMS, *Appellee,* v. IVAN MARSHALL, WARREN REED, EDWARD LARKIN, JACK MITCHELL AND GEORGE WARDEN, *Appellants.*

(512 P. 2d 365)

Opinion filed July 14, 1973.

*Robert D. Beall,* of Leavenworth, argued the cause and was on the brief for the appellants.

*Austin N. Wyrick,* of Leavenworth, argued the cause, and *Tom Boone,* also of Leavenworth, was with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is a mandamus action brought by William F. Adams, a member of the Leavenworth Police Department, to compel the defendants, who constitute the Civil Service Commission of Leavenworth, Kansas, to follow certain due process procedures at a scheduled hearing of his appeal to that body. The district court issued an *ex parte* alternative order at the time the action was filed and that order was later made permanent after a hearing had been held. We shall refer to the parties as Adams or plaintiff, on the one hand, and the Commission or defendants, on the other.

There is no substantial dispute of fact. On December 1, 1971, Police Chief Alfred H. Pickles, by letter, suspended Adams from

the police force for a period of two weeks without pay. On receipt of the communication Adams filed a notice of appeal with Pickles, who thereupon confirmed his order of suspension. The appeal from Pickles was heard by the city manager who threw out one charge, found Adams guilty of two charges and reduced the period of suspension to eight days, again without pay. From the city manager's order Adams took an appeal to the Civil Service Commission, which scheduled a hearing for January 24, 1972, at 7:00 p. m.

Before the appointed hour arrived, and following conferences between counsel on both sides, the Commission laid down a set of four ground rules which were anathema to the plaintiff and his counsel. Two of the controversial rules were subsequently settled to everyone's satisfaction, but two remained, namely, that the witnesses appearing at the hearing could not be examined or cross-examined and that the hearing would be closed to the public and particularly to members of the press.

At approximately 3:20 p. m. of the day on which the appeal was scheduled to be heard, the present action was commenced and an alternative order was issued by the court directing the Commission to permit examination and cross-examination of all witnesses and to admit the public, including accredited members of the press, at all stages of the proceedings, except during its deliberations, or else to show cause to the contrary.

The alternative order was not served on the defendants immediately, but only after they had convened for the hearing and after a lengthy preliminary argument had been presented by plaintiff's counsel which resulted in the Commission revising its rules to permit five minutes' cross-examination of each witness. When served with the alternative order the defendants peremptorily adjourned the hearing without further ado. Subsequently the Commission filed a motion to quash, and a hearing on the alternative order was held before the district court on February 4, 1972. Following the hearing, and on February 24, 1972, the court found (1) that the defendants were acting in a quasi-judicial capacity, (2) that counsel should be permitted to conduct such examination of witnesses as was required for a full disclosure of the facts and that the Commission should refrain from imposing arbitrary time limits upon examination or cross-examination of witnesses, (3) that the hearing should be open to the public and accredited members of the press except during deliberations, and (4) that other issues

raised in plaintiff's motion had been settled. Final judgment was entered in conformity with these findings. As we have said, the defendants have appealed from the judgment.

Essentially, the Commission's argument may be divided into two parts, although they tend to converge in some respects. The first point covered in the briefs relates to the applicability of mandamus proceedings under the circumstances of this case, while the second has reference to the nature of the hearing conducted by the Commission and the requirements of due process with respect thereto.

We shall consider the two propositions in reverse order, first giving attention to matters of due process. Much has been written about due process and we do not propose to engage in exhaustive discussion of the general subject. Rather, we shall attempt to confine our observations to the specifics which are before us.

Section 1-517 of the 1972 Code of Leavenworth, Kansas, said code being a compilation of city ordinances, provides as follows:

"RULES GOVERNING REMOVAL, SUSPENSIONS; APPEALS. An employee may be removed only for such cause as will promote the efficiency of the service. The employee must receive written notice of such action fifteen (15) days before the effective date of removal, specifying the charges preferred against him.

"A supervisor has the authority to suspend a subordinate for neglect of duty, disobedience of orders, or for such other reasons demanding prompt action.

"An employee may be placed on annual leave, if available, and or leave without pay as appropriate. Within twenty-four (24) hours, the supervisor will be required to advise the employee the reason for his action in sufficient detail to clearly relate the causes and actions taken. Original of such letter will be presented to the employee.

"An employee may submit to the supervisor a written reply to the charges brought against him within twenty-four (24) hours. Unless an extension of time is requested and granted, the original will be sent to the supervisor. The supervisor will consider the employee's reply in arriving at a decision. The employee will receive a written decision by the supervisor. The employee will have the right to appeal the action taken against him by the supervisor to the City Manager. The City Manager will review the actions taken and shall make a decision which shall be presented to the employee in writing. *The employee may appeal the city manager's decision to the civil service commission. The commissioners shall have the power to enforce the attendance at hearings of employees involved, call witnesses, have access to security files and administer oaths of truthfulness. The commission will conduct a thorough investigation of the facts in the case, actions taken, and conformance to the rules and regulations of the merit system.* The decision of the commissioners will be decided by the majority vote of those in attendance and will be final. The employee will be notified in writing the decision of the Board of Commissioners. Copies of charges, employee replies and related correspondence

will be sent to the secretary of the commission. (Ord. 5193, Sec. 4)" (Emphasis added.)

It is within the context of the foregoing ordinance that we examine the due process questions raised on appeal.

The trial court was correct in its finding that the members of the Commission were acting in a quasi-judicial capacity in hearing the Adams appeal. In *Thompson v. Amis*, 208 Kan. 658, 493 P. 2d 1259, we had under consideration the nature of an appeal conducted by the Kansas Civil Service Board in a case involving the dismissal of a state employee. We said in that case that quasi-judicial was "a term applied to administrative boards or officers empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions and exercise discretion of judicial nature." (p. 663.) We concluded in *Thompson* that the state board exercised quasi-judicial functions, and we are impelled to a similar conclusion with respect to the civil service commission in the present case.

Where an administrative body acts in a quasi-judicial capacity the requirements of due process will attach to the proceedings held before it. This principle was pointed out in *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System*, 205 Kan. 780, 784, 473 P. 2d 72, where the court said:

". . . The constitutional guaranty of due process of law applies to administrative as well as judicial proceedings where such proceedings are *quasi* judicial in nature."

The pronouncement in *Neeley* is in harmony with the general rule expressed in 2 Am. Jur. 2d, Administrative Law, § 351, p. 163:

"The constitutional guaranty of due process of law applies to, and must be observed in, administrative as well as judicial proceedings, particularly where such procedings are specifically classified as judicial or quasi-judicial in nature, or where the legislature is deemed to have intended the due process safguard to apply. Procedure embodying due process requirements is essential not only to the legal validity of the administrative regulation, but also to the maintenance of public confidence in the value and soundness of this important governmental process. . . ."

Two ground rules laid down by the Commission in this case are said by the plaintiff to violate basic due process demands: (1) the right to examine and cross-examine witnesses and (2) the right to an open or public hearing. We are inclined to agree.

The right to the cross-examination of witnesses in quasi-judicial or adjudicatory proceedings is one of fundamental importance and is generally, if not universally, recognized as an important require-

ment of due process. This concept is emphasized by the text in 2 Am. Jur. 2d, Administrative Law, § 397, p. 202:

"A full hearing at which every party has the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts, is essential for wise and just application of the authority of administrative agencies. . . ."

In speaking of due process requirements, the United States Supreme Court, in *Int. Com. Comm. v. Louis. & Nash. R. R.*, 227 U. S. 88, 93, 57 L. Ed. 431, 33 S. Ct. 185, said:

". . . All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding. . . ."

A compendium of the requirements of due process is set forth in *Board of Education of Choctaw County v. Kennedy*, 256 Ala. 478, 482, 55 So. 2d 511, a proceeding in mandamus against the board of education to vacate a resolution canceling the petitioner's contract and to reinstate him as principal of a county high school:

". . . The Teacher Tenure Law in its provisions clearly contemplates the rudimentary requirements of fair play with reasonable notice and opportunity to be present, information as to charges made and opportunity to controvert such charges, the right to examine and cross-examine witnesses and submit evidence and be heard in person and by counsel. . . ."

Similar language is found in *State ex rel. Spurck v. Civil Service Board*, 226 Minn. 240, 32 N. W. 2d 574, an action brought to reverse the decision of the state civil service board on an appeal from an order of the civil service director. On page 247, the Minnesota Supreme Court said:

"Aside from any requirement of due process, the right to a trial includes that of being heard, production of witnesses and documents, the taking of evidence, examination and cross-examination of witnesses, representation by counsel, presentation of arguments, decision upon the merits, and everything incident thereto. . . ."

Although the Commission eventually modified its stand on cross-examination, we do not view its concession as satisfying due process requirements. In the first place the Commission did not relent so far as direct examination of witnesses was concerned. Of equal, if not greater importance, was its arbitrary, before-the-fact time limitation imposed on the cross-examination of witnesses.

It has somewhere been said, if our imperfect recollection can be

trusted, that cross-examination is the anvil on which the truth may be forged. We have said many times that the extent of cross-examination lies largely within the sound judicial discretion of the court. (See cases collected in 5 Hatcher's Kansas Digest [Rev. Ed.], Witnesses, §§ 89, 91.) However, cross-examination may not be unduly curtailed in testing the soundness of a witness' testimony (*Murphy v. Central Kansas Electric Cooperative Ass'n*, 178 Kan. 210, 284 P. 2d 591), nor may it be so limited and circumscribed as to preclude a full disclosure of the facts. (2 Am. Jur. 2d, Administrative Law, § 397, supra.)

No administrative body, no matter how prescient its members, can foretell in advance of hearing the extent to which the testimony of witnesses may be limited without impinging upon the pursuit of truth. The five-minute limitation which the Commission, before trial, placed on the cross-examination of all witnesses was in our opinion an impermissible restriction on due process.

Passing to the question of public trial, we believe it may generally be said that proceedings of a judicial nature held behind closed doors and shielded from public scrutiny have long been repugnant to our system of justice. The concept that trials and judicatory hearings be open to the public gaze is inherent in our idea of due process. This view was voiced many years ago by the United States Supreme Court in *Morgan v. United States*, 304 U. S. 1, 82 L. Ed. 1129, 58 S. Ct. 773, in the following words:

". . . The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand 'a fair and open hearing,'—essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an 'inexorable safeguard.' . . ." (pp. 14, 15.)

In 73 C. J. S., Public Administrative Bodies and Procedure, § 132, pp. 456-458, we find the essential elements of an administrative hearing summed up in this way:

"An administrative hearing, particularly where the proceedings are judicial or quasi-judicial, must be fair, or as it is frequently stated, full and fair, fair and adequate, or fair and open. The right to a full hearing includes a reasonable opportunity to know the claims of the opposing party and to meet them. In order that an adminstrative hearing be fair, there must be adequate notice of the issues, and the issues must be clearly defined. All parties must

be apprised of the evidence, so that they may test, explain, or rebut it. They must be given an opportunity to cross-examine witnesses and to present evidence, including rebuttal evidence, and the administrative body must decide on the basis of the evidence. . . ."

The requirements of an administrative hearing of a judicial or quasi-judicial character are phrased in this language in 2 Am. Jur. 2d, Administrative Law, § 412, p. 222:

". . . A hearing before an administrative agency exercising judicial, quasi-judicial, or adjudicatory powers must be fair, open, and impartial, and if such a hearing has been denied, the administrative action is void. . . ."

On the subject of open hearings, see also *Fitzgerald v. Hampton*, 467 F. 2d 755; *Charles v. Blount*, 430 F. 2d 665; *Garvey v. Freeman*, 397 F. 2d 600.

The defendants call our attention to the following passage from 4 McQuillin Mun Corp (3rd Ed), § 12.255c, p. 344:

"A disciplinary suspension has been deemed not to be a removal, discharge or reduction in rank or pay requiring the preferring of charges and a hearing. . . ."

The sole case cited in support of the text comes from the Commonwealth of Pennsylvania, and is titled *Loftus v. Carbondale*, 195 Pa. Superior Ct. 52, 169 A. 2d 581. However, the decision is not apropos here, for it is based on a Firemen's Civil Service Act providing that the department director might suspend an employee on the ground of misconduct for a period of ten days without preferring charges and without a hearing of the council.

The Leavenworth ordinance is quite different. It contains no provisions granting the chief of police authority to discipline members of his force without charges or without a hearing. Procedures for hearing at all levels are well spelled out in the present ordinance.

In 16 McQuillin Mun Corp (3rd Ed) § 45.12, p. 611, it is said that the removal and suspension of police officers is governed by rules relating to the removal and suspension of municipal officers generally. In the same work, Volume 4, the essentials of a civil service hearing are discussed:

"Even though, as sometimes said, the power to remove or suspend from an office or position is administrative rather than judicial, it is none the less to be exercised in a judicial manner. If the administrative body, such as a local board, has been clothed with quasi-judicial functions, there must be a hearing of the character of an informal trial in accordance with the provisions of the controlling law. . . .

"The trial must be fair. Requirements of substantial justice must be observed. The officer or tribunal hearing the charges is bound to a reasonably

strict observance of all legal requirements and the fundamentals of a fair and impartial trial. . . ." ( § 12.260, pp. 370, 371.)

"The theme of fairness threads its way through the notice, hearing and right of appeal provisions of civil service laws relating to the discipline of public servants. A proceeding in the nature of a judicial investigation is contemplated. The commission is bound to a reasonably strict observance of all legal requirements and the fundamentals of a fair and impartial trial. The elements of fairness and impartiality must appear in the conduct of the hearing itself and in the deliberations and decision which follow. Due process must be followed." ( § 12.260a, pp. 372, 373.)

Reference is made in the Commission's brief to private and informal procedures followed by the Veterans Administration, although neither the alleged procedures nor V. A. regulations are shown by the record. We are not disposed to dissect or construe undisclosed regulations of a federal agency. We deal with a quasi-judicial hearing conducted by a civil service commission under explicit provisions of a municipal ordinance, concerning which we are constrained to hold that due process requirements are applicable.

We turn to the other question posed by the defendants, to wit: Is the remedy of mandamus available under the circumstances existing in this case? Although the applicability of mandamus has not appeared before this court in the present frame of reference we believe the answer to this question must be in the affirmative.

K. S. A. 60-801 relates to the nature of mandamus and provides as follows:

"Mandamus is a proceeding to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, which duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law."

Judge Gard, in his work, Kansas Code of Civil Procedure, Annotated, has said of this statute:

"The definition of mandamus in this section is short, concise, and sufficient. It is available for the purpose of compelling the performance of a clearly defined duty, not involving the exercise of discretion, by a person or a corporation whose duty arises out of a trust relationship, or a public or corporate responsibility. . . ." ( § 60-801, p. 608.)

This view of the purpose served by mandamus was propounded by this court in *Mobil Oil Corporation v. McHenry*, 200 Kan. 211, 436 P. 2d 982, where we quoted Judge Gard's language with approval.

The defendants point out that the issuance of an order of mandamus is a discretionary matter and the order will not issue as a mat-

ter of right, nor unless the defendant's legal duty is clear, citing *State, ex rel., v. Paulsen,* 204 Kan. 857, 862, 465 P. 2d 982. (See, also, *State, ex rel., v. Salome,* 169 Kan. 585, 595, 220 P. 2d 192.)

We express no disagreement with the *Paulsen* decision. It accurately reflects what we held in *Mobil Oil Corporation,* and represents the general, if not the universal, rule. In 52 Am. Jur. 2d, Mandamus, § 306, p. 632, the text recites:

"Applying the general rule already discussed, it is established that a writ of mandamus directed to a court or judge will issue only at the instance of an applicant who has a clear right to demand performance of the act sought to be enforced. . . ."

We believe the instant case comes within the rule. No judicially-related duty would seem more clear than that of protecting the due process rights of a litigant. In the instant case the defendants chose a course of action which, in Mr. Adams' view, infringed upon such rights, and we cannot say the remedy of mandamus was not available to compel the Commission to afford him due process.

But the defendants insist that mandamus will not lie for an anticipated breach of a legal duty and that a demand must be made and performance refused before an action in mandamus may be instituted. That such is the general rule is aptly stated in 52 Am. Jur. 2d, § 305, p. 632:

"Where the court cannot be said to be in default of the duty sought to be enforced until a proper demand for performance is made, followed by a refusal or neglect to perform, such demand should be made."

An exception to the rule exists where a demand would be ineffectual. The law in this regard is found summarized in 55 C. J. S., Mandamus, § 32, pp. 60-62:

"As a general rule the relator must have demanded performance of the act or duty which he seeks to enforce . . .

"The rule, however, is not inflexible or invariable. Thus, where it appears that a demand would be unavailing, it need not be made, as where an intentional default in duty exists or the course and conduct of officers is such as to show a settled purpose not to perform the imposed duty. . . .

"In conformity with the general rule, before mandamus will issue to a court it must be made to appear that the relator has demanded action in determining a matter cognizable by it, unless the case falls within one of the exceptions or limitations discussed above, as where a demand would be vain and fruitless."

The exception fits this case like a glove. Prior to the hearing, the Commission had ordained, and so notified Adams, that witnesses could neither be examined nor cross-examined and that the hearing would be closed to the public. Both rulings offended due process,

in our opinion. Later developments disclosed that the defendants were for the most part inflexible in their course of action, bending only so far as to permit five minutes' cross-examination of each witness which, as we have already said, was an impermissible and arbitrary limitation of a due process right. It is obvious from all that transpired before the alternative order in mandamus was served on the defendants that prior demands would have been unproductive.

We conclude that the judgment entered by the trial court was correct, and the same is hereby affirmed.