No. 52,798

W. D. Martin, *Appellee,* v. Cudahy Foods Company, *Appellant.*

(646 P.2d 468)

Opinion filed June 11, 1982.

*Rex G. Beasley,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for appellant.

*James L. Pinkerton,* of James L. Pinkerton, Chartered, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Holmes, J.: This is a workmen's compensation case in which we granted review of the unpublished decision of the Court of Appeals filed December 3, 1981. Cudahy Foods Company, a self-insurer, appealed to the Court of Appeals from a decision of the district court awarding W. D. Martin compensation based upon an occupational disease which developed while Martin was employed by Cudahy. The Court of Appeals reversed the decision of the district court and ordered the case remanded for the entry of an award based upon accidental injury rather than on an occupational disease.

The facts are not in substantial dispute. Claimant was employed by Cudahy for a period of about twenty years. In 1973 he was working as a ham-grader, a job which required claimant to lift, examine and trim hams of varying size and weight, and thus to use his arms, wrists and hands repeatedly. He developed pain and swelling in his right wrist for which he received medical attention from the company nurse and others, and he was off work for a short period of time in 1973, and periodically thereafter. He continued to work at the same job, and had problems with his wrist continually until on June 15, 1975, when he was forced to leave his employment due to the pain. Two days later he saw Dr. Tyrone D. Artz, who diagnosed the problem as tenosynovitis, an inflammation of the tendon sheaths in the wrist. At first, conservative treatment was tried; later, on July 29, 1975, Dr. Artz

performed surgery. About that time, the Cudahy plant closed. Claimant applied for various jobs during the following year, but continued to have problems with his wrist. Dr. Artz performed a second operation in April, 1976, to release scar tissue. Claimant was released to return to work in July, 1976. All of Mr. Martin's hospital and medical expenses were paid by Cudahy. In July, 1976, he obtained a job with the MBPXL meat processing plant, and he has continued in that employment, doing work similar to that which he did at Cudahy.

Several points are raised in the original appeal to the Court of Appeals and in claimant's petition for review, including various arguments about notice, service of a proper claim, whether claimant proved a diminution in earning capacity which would support the award of the district court, and whether the district court followed the correct rule in determining the amount of the award. The bottom line, however, is the determination of whether claimant suffered an accidental injury or an occupational disease. There is no contention that claimant's disablement, however it may be classified, did not arise out of and in the course of his employment. The examiner found claimant had suffered an accidental injury while the district court made an award calculated on the basis of an occupational disease. If claimant suffered an accidental injury as opposed to a disablement from occupational disease, the Court of Appeals was correct in remanding the case with directions to award compensation based upon accidental injury. While the Court of Appeals based its decision on the sufficiency of the notice and claim, we nevertheless find that it reached the right result, albeit for the wrong reason.

The evidence was generally undisputed that claimant suffered from tenosynovitis brought about and aggravated by his work at Cudahy. Depositions of three doctors were admitted before the examiner and there is no serious dispute about the nature of claimant's ailment. All of the experts classified claimant's problem to be tenosynovitis, although they did not agree as to whether tenosynovitis was a disease or an injury. All agreed, however, that it resulted from the constant repetitive cyclic activities of claimant in using his hands and wrists in performing his duties as a ham-grader or ham-boner.

K.S.A. 44-5a01(b), as amended in 1974, states:

"'Occupational disease' shall mean only a disease arising out of and in the

course of the employment resulting from the nature of the employment in which the employee was engaged under such employer, and which was actually contracted while so engaged. *'Nature of the employment' shall mean,* for purposes of this section, *that to the occupation, trade or employment in which the employee was engaged, there is attached a particular and peculiar hazard of such disease which distinguishes the employment from other occupations and employments,* and which creates a hazard of such disease which is in excess of the hazard of such disease in general. The disease must appear to have had its origin in a special risk of such disease connected with the particular type of employment and to have resulted from that source as a reasonable consequence of the risk. Ordinary diseases of life and conditions to which the general public is or may be exposed to outside of the particular employment, and hazards of diseases and conditions attending employment in general, shall not be compensable as occupational diseases . . . ." (Emphasis added.)

Prior to the adoption of the present version of 44-5a01, the statute, K.S.A. 44-5a02 (Corrick, repealed 1974), specified certain conditions, including tenosynovitis, and classified them as occupational diseases for purposes of the workmen's compensation act. See *Schubert v. Peerless Products, Inc.,* 223 Kan. 288, 573 P.2d 1009 (1978). Claimant asserts that the 1974 amendment which eliminated specific conditions previously classified as occupational diseases was intended by the Legislature to broaden the definition of occupational disease and that all of the conditions contained in the earlier statute should continue to be read into the present statute. We disagree.

The testifying physicians agreed that tenosynovitis, also known as De Quervain's Disease, may be caused by repetitive cyclic activity such as that which Mr. Martin was required to perform on his Cudahy job. It is a condition that generally develops over a period of time as opposed to being the result of a single traumatic occurrence and results in the inflammation of a tendon and its sheath. It is not confined to the wrist but may occur in various parts of the body when the tendons are subjected to repeated cyclic activities which might be described as repeated small traumas occurring over a long period of time. It may also result from puncture wounds, contusions and lacerations, or be caused by lymphatic extension from an abrasion. Taber's Cyclopedic Medical Dictionary (12th Ed. 1973, p. T-16).

K.S.A. 44-5a01(*b*) states that an occupational disease must result from the nature of the employment which requires that there be attached to the employment a particular and peculiar hazard of such disease which distinguishes the employment from other

occupations and which carries with it a special risk of such disease connected with the particular type of employment. The disability suffered by claimant was one which may be common to numerous occupations or employments where repeated cyclic use of a portion of the body may result in inflammation of tendons and sheaths. Dr. Artz testified it was not limited to the meat processing or assembly line type industries and that it may occur in housewives or from other employment which requires use of the hands. Thus it is clear that tenosynovitis may be incurred from various types of activity or from individual incidents of trauma or injury. In the present case, it is more akin to accidental injury from repetitive small traumas than to occupational disease as defined in the statute.

We hold that tenosynovitis when incurred through repetitive cyclic activities of an employee is an accidental injury within the meaning of the workmen's compensation act and not an occupational disease as defined in K.S.A. 44-5a01(b).

In view of the foregoing, it is not necessary to consider the other points raised.

The ruling of the Court of Appeals in reversing and remanding the case for further proceedings is affirmed, the decision of the district court is reversed and the case is remanded to the trial court with directions to award claimant compensation based upon accidental injury.

MILLER, J. not participating.