(663 P.2d 1144)

No. 54,882

Patricia A. Bahr, *Appellee*, v. Iowa Beef Processors, Inc., *Appellant*.

Opinion filed June 2, 1983.

*Wendell F. Cowan, Jr.*, of Topeka, for the appellant.

*E. L. Lee Kinch*, of Ratner, Mattox, Ratner, Barnes & Kinch, P.A., of Wichita, for the appellee.

Before Rees, P.J., Spencer and Swinehart, JJ.

Swinehart, J.: This is an appeal by respondent Iowa Beef

Processors, Inc. (IBP), in a workers' compensation case from an award in favor of claimant Patricia A. Bahr.

Bahr began working for IBP in Emporia, Kansas, on October 25, 1977. Prior to 1977 Bahr had completed three years of college, studying home economics, and had been employed as a cook, waitress, restaurant hostess, fashion merchandising clerk, and insurance sales agent. Bahr was employed by IBP as a meat cutter. Her initial job assignment was to trim loin wings. Several months later, she was assigned to a job classified as the "wizard knife." During the spring of 1978, Bahr was transferred to skirt trimming, which was her job classification on October 16, 1978, the date of her injury.

Bahr had experienced pain, swelling and stiffness in her hands associated with her work since October of 1977. The problems continued throughout her employment at IBP. On October 16, 1978, Bahr's hands were particularly painful. While trimming skirts, Bahr experienced what she described as an "electrical shock" which went up through her arm, similar to a blow to the "funny bone" on one's elbow. At that point Bahr dropped her knife and was unable to keep a grip on it. She was sent to the dispensary, and subsequently saw the company physician since the discomfort in her hands continued. Bahr was also experiencing pain in her shoulder. The company physician eventually referred Bahr to Dr. David Edwards, an orthopedic surgeon, in November of 1978. Dr. Edwards diagnosed her problem to be chronic scapular elevator strain with possible early carpal tunnel syndrome. Bahr was then referred to Dr. Patel for nerve conduction studies, and he diagnosed mild carpal tunnel syndrome in Bahr's right hand. Based upon the clinical findings and Bahr's complained-of symptoms, Dr. Edwards recommended a surgical carpal tunnel release. Dr. Edwards performed the out-patient operation on January 15, 1979.

Dr. Edwards released Bahr to return to work on March 12, 1979. Bahr had recovered well, but still complained of pain in her shoulder. Due to the previous carpal tunnel and the complaints relative to Bahr's shoulder, Dr. Edwards recommended that she be restricted from returning to knife work and that the company physician consider further restrictions for the shoulder problem. Dr. Campbell, the company physician, recommended that Bahr be restricted from performing tight grip work, heavy lifting, and overhead work.

Upon her return to work on March 12, 1979, IBP offered Bahr a job which it believed met her restrictions. The assignment was a job of sliding loins, which involved hooking pieces of meat weighing between 45 and 60 lbs. and sliding them across a table onto a conveyor belt. Bahr believed the assignment to be heavy work which was contrary to her work restrictions and declined the position. Bahr was thereupon terminated. IBP maintains that Bahr chose to terminate her employment.

Bahr's shoulder complaints continued. Dr. Edwards was of the opinion that Bahr's remaining shoulder complaint amounted to a five percent functional impairment of the upper right extremity. She was referred to Dr. David Thurston for further evaluation. Dr. Thurston saw Bahr between October 8, 1979, and March 17, 1981. His diagnosis was a strain of the upper shoulder and neck, as well as symptoms compatible with a thoracic outlet syndrome and a cervical disc injury. Dr. Thurston agreed that Bahr should avoid heavy lifting in an overhead position, and said that surgery might possibly remedy her problem in the future.

Since leaving IBP, Bahr has been employed in a number of positions. She worked as a secretary-receptionist, but left because her hands did not function well enough to type accurately. She subsequently worked as a waitress in a bar, and then as a security guard at the construction site of the Wolf Creek Nuclear Plant. Bahr eventually collected unemployment. Bahr then got pregnant and had a child. She testified that she ideally would like to return to school to finish her degree and then teach.

Bahr filed a claim for workers' compensation on November 26, 1980. Her claim was for compensation "by reason of accident or occupational disease" arising out of and in the course of her employment with IBP on or about October 16, 1978. Bahr also filed a notice of an occupational disease, to-wit, Carpal Tunnel Syndrome.

On December 23, 1980, Bahr filed an Application for Hearing Before Examiner and Claim for Compensation with the Division of Workers' Compensation, State of Kansas. In the application, Bahr only claims a disability by reason of occupational disease. The case subsequently proceeded and was tried on this theory. In his December 29, 1981 award, the administrative law judge found that Bahr had not sustained her burden of proving that she became disabled by reason of occupational disease as that term is

defined in K.S.A. 44-5a01. The judge, instead, found that Bahr had suffered an accidental injury and awarded compensation accordingly. The judge found that Bahr suffered a 100% permanent partial disability from engaging in work of the same type and character as she was engaged in at the time of the accident.

Upon proper appeal to the District Court of Lyon County, the district court approved and adopted the administrative law judge's award.

Respondent IBP appeals and raises the following two issues: (1) Did the trial court err in approving the administrative law judge's award based upon accidental injury, even though the issue of accidental injury was not raised by claimant or otherwise litigated in the proceedings, thereby denying respondent due process of law? (2) Was the award of 100% work disability supported by substantial competent evidence?

Respondent IBP contends that the trial court erred in approving the administrative law judge's award based upon accidental injury, since the issue of an accidental injury was not raised by claimant Bahr or otherwise litigated in the proceedings. IBP maintains that such an award denies it due process of law because it did not have notice of a claim of accidental injury.

The Kansas Workmen's Compensation statute makes a clear distinction between disability resulting from accidental injury and an occupational disease. K.S.A. 44-508(d) defines "accident":

" 'Accident' means an undesigned, sudden and unexpected event or events, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. The elements of an accident, as stated herein, are not to be construed in a strict and literal sense, but in a manner designed to effectuate the purpose of the workmen's compensation act that the employer bear the expense of accidental injury to a worker caused by the employment."

## K.S.A. 44-5a01(b) defines "occupational disease":

" 'Occupational disease' shall mean only a disease arising out of and in the course of the employment resulting from the nature of the employment in which the employee was engaged under such employer, and which was actually contracted while so engaged. 'Nature of the employment' shall mean, for purposes of this section, that to the occupation, trade or employment in which the employee was engaged, there is attached a particular and peculiar hazard of such disease which distinguishes the employment from other occupations and employments, and which creates a hazard of such disease which is in excess of the hazard of such disease in general. The disease must appear to have had its origin

in a special risk of such disease connected with the particular type of employment and to have resulted from that source as a reasonable consequence of the risk. Ordinary diseases of life and conditions to which the general public is or may be exposed to outside of the particular employment, and hazards of diseases and conditions attending employment in general, shall not be compensable as occupational diseases:   . . .   "

The measure of compensation for an unscheduled permanent partial disability resulting from an accidental injury under K.S.A. 44-510e is the extent to which the ability of the claimant to engage in work of the same type and character she was performing at the time of the injury has been reduced. The measure of compensation for disability due to occupational disease has a much broader scope. The capacity of the claimant to earn the same or higher wages than she did at the time of the disablement, by whomever employed and from any trade or employment, is relatable to the amount of compensation due. See *Knight v. Hudiburg-Smith Chevrolet, Olds., Inc.*, 200 Kan. 205, 209, 435 P.2d 3 (1967); K.S.A. 44-5a04. Consequently, the determination between whether the claimant suffered from an accidental injury or an occupational disease is extremely important in terms of the measure of compensation.

The administrative law judge specifically found that Bahr did not sustain the burden of proving that she became disabled by reason of occupational disease, since the evidence did not provide any basis for finding that her condition resulted from a particular and peculiar hazard which distinguishes the employment from other occupations and employment, or which creates a hazard of such disease in excess of the hazard of such disease in general. See *Martin v. Cudahy Foods Co.*, 231 Kan. 397, 646 P.2d 468 (1982). The administrative law judge found instead that Bahr was disabled as a result of an accidental injury, "notwithstanding claimant's insistence that she suffered an occupational disease," and applied the measure of compensation for disability from accidental injury. The issue presented here on appeal is whether the administrative law judge can, on his own, make an award based on an accidental injury when no such accidental injury has been claimed and no notice of that particular theory of recovery afforded to the respondent.

In *Adams v. Marshall*, 212 Kan. 595, 601-02, 512 P.2d 365 (1973), the court discussed the necessity of notice of issues to be presented in administrative hearings:

"In 73 C.J.S., Public Administrative Bodies and Procedure, § 132, pp. 456-458, we find the essential elements of an administrative hearing summed up in this way:

" 'An administrative hearing, particularly where the proceedings are judicial or quasi-judicial, must be fair, or as it is frequently stated, full and fair, fair and adequate, or fair and open. The right to a full hearing includes a reasonable opportunity to know the claims of the opposing party and to meet them. In order that an administrative hearing be fair, there must be adequate notice of the issues, and the issues must be clearly defined. All parties must be apprised of the evidence, so that they may test, explain, or rebut it. They must be given an opportunity to cross-examine witnesses and to present evidence, including rebuttal evidence, and the administrative body must decide on the basis of the evidence. . . .' "

In 2 Am. Jur. 2d, Administrative Law § 417, p. 228, it is stated:

"The right to a hearing means the right to a meaningful hearing with the awareness of what matters must be countered. It embraces the right to a reasonable opportunity to know the claims of the opposing party and to meet them."

The Workmen's Compensation Act is complete and exclusive within itself in establishing procedures covering every phase of the right to compensation. *Peschka v. Wilkinson Drilling Co.*, 192 Kan. 126, 130-31, 386 P.2d 509 (1963); *Taylor v. Taylor*, 156 Kan. 763, 137 P.2d 147 (1943). Consequently, the workers' compensation statute must be examined to determine the extent to which notice is statutorily required.

The first notice required is notice of injury pursuant to K.S.A. 44-520. There is no dispute as to whether this notice was given in a timely manner, since IBP was notified the day of the accident. The next notice that is required is a "claim for compensation" pursuant to K.S.A. 44-520a. Bahr made her claim on November 26, 1980, and in that claim alternatively claimed compensation by reason of accident or occupational disease. K.S.A. 44-5a17 provides that an additional notice must be filed when compensation is sought by reason of occupational disease. Such notice was made by Bahr on November 21, 1980, specifying that she was disabled by carpal tunnel syndrome. The next notice which must be afforded is the form of an application for a hearing pursuant to K.S.A. 44-534. K.A.R. 51-1-7 provides that such an application must be made on "Form E-1." Bahr filed such an application, and in it she apparently limited her claim to one for disability arising out of an occupational disease. The possibility of compensation for disability by reason of an accidental injury

was not further advanced or pursued by Bahr. K.S.A. 44-534 provides that the application for hearing "shall set forth the substantial and material facts in relation to said claim."

As a general rule, the provisions of the Workmen's Compensation Act are to be liberally construed in favor of the worker, and compensation awarded where it is reasonably possible to do so. *Ours v. Lackey*, 213 Kan. 72, Syl. ¶ 3, 515 P.2d 1071 (1973). The administrative law judge and the court are not to be bound by technical rules of procedure. K.S.A. 44-523.

The court has dealt with the general issue of lack of notice in a workers' compensation setting, but not in the particular context of the case presented here on appeal. It has generally been held that a written claim for compensation prescribed by K.S.A. 44-520a need not take on any particular form, so long as it is in fact a claim. *Place v. Falcon Seaboard Drilling Co.*, 186 Kan. 523, 528, 350 P.2d 788 (1960). It is also well settled that lack of notice to the employer of an injury, as required by K.S.A. 44-520, does not bar a claim for workers' compensation unless the employer has been prejudiced thereby. *Pike v. Gas Service Co.*, 223 Kan. 408, 573 P.2d 1055 (1978). The purpose of the notice required by K.S.A. 44-520 is to afford the employer an opportunity to investigate the accident and to furnish prompt medical treatment. Prejudice may arise if the employer is substantially hampered in making an investigation so as to prepare a defense. *Pike*, Syl. ¶ 3.

In the present case, IBP maintains that it was prejudiced by the lack of notice of a claim based on accidental injury rather than occupational disease in its preparation of a defense. IBP contends that its questioning of the witnesses and the development of the evidence would have been different, given the difference in the elements of the two claims and their respective measure of compensation.

Bahr maintains that the recent decision in *Martin v. Cudahy Foods Co.*, 231 Kan. 397, sustains the action taken by the administrative law judge with respect to the notice issue. The facts in *Martin* are the reverse of those in the present case. The claimant alleged an accidental injury and the case was tried as an accidental injury. The examiner made an award based on an accidental injury and the district court, on appeal by the respondent, modified the award by treating the disability as an occupational disease. The Court of Appeals reversed in an unpub-

lished opinion on the ground that a written claim for compensation due to an occupational disease was not made within the statutory period of time provided for in K.S.A. 44-5a17. The Supreme Court affirmed the Court of Appeals' reversal of the trial court, but on different grounds, finding that the injury in question was not an occupational disease, but rather an accidental injury. The administrative law judge did not, however, reach any decision on the notice question presented in the case here on appeal, and therefore *Martin* cannot be read to support or disapprove of Bahr's position.

An examination of the record in the present case does not indicate that IBP has suffered any prejudice by the administrative law judge's classification of the injury as an accidental injury. The apparent cause of Bahr's medical problem was from the repeated use of her shoulder and arm in a certain manner. IBP fully pursued the extent of Bahr's injuries, the treatment obtained, and her remaining complaints by examining Bahr and her doctors. IBP also examined Bahr's supervisor and a vocational counselor to explore Bahr's employment limitations, both as to the same type of work she was performing at the time of her injury and work which she could perform in the general labor market. It is difficult to pinpoint exactly what more IBP could have gone into in its investigation and examination of the witnesses had it known that the claimed disability was the result of an accidental injury rather than an occupational disease. IBP appears to have covered all the ground relevant to either theory and therefore we find that it was not prejudiced by a lack of notice in the application for hearing. We also note that up until the time the application for hearing was filed, Bahr had indicated that she was pursuing compensation alternatively under both theories. Consequently, IBP cannot be found to have been totally without notice of a claim of an accidental injury.

IBP also contends that the award of 100% work disability is not supported by substantial competent evidence. This court's standard of review in workers' compensation cases is well settled. Findings in a workers' compensation case which are supported by substantial competent evidence will be upheld upon appellate review. *Day and Zimmerman, Inc. v. George,* 218 Kan. 189, 542 P.2d 313 (1975). In determining whether there is substantial competent evidence to support a finding in a workers' compen-

sation case, the record must be viewed in the light most favorable to the prevailing party below. *Cody v. Jayhawk Pipeline Corporation,* 222 Kan. 491, 565 P.2d 264 (1977).

A review of the record in the present case reveals that the administrative law judge's findings are supported by substantial competent evidence. It is clear that Bahr met with personal injury by accident on or about October 16, 1978, arising out of and in the course of her employment with IBP. There was no evidence to indicate that the injury resulted from a particular or peculiar hazard which distinguishes the employment from other occupations or employments, so consequently, an occupational disease was not proved. The medical testimony revealed that Bahr had a functional impairment of the right dominant upper extremity of 5%. The work restrictions imposed by her doctors by reason of her functional impairment, however, completely prohibited Bahr from engaging in work of the same type and character as she was engaged in at the time of the accident, *i.e.,* meat trimming. The administrative law judge, therefore, found that Bahr had been rendered 100% permanently partially disabled. In *Anderson v. Kinsley Sand & Gravel, Inc.,* 221 Kan. 191, 195, 558 P.2d 146 (1976), the court stated:

"Functional disability is the loss of a part of the total physiological capabilities of the human body. Work disability is that portion of the job requirements that a workman is unable to perform by reason of an injury. Work disability generally carries a higher percentage of disability than a functional disability."

See also *Grounds v. Triple J Constr. Co.,* 4 Kan. App. 2d 325, 328, 606 P.2d 484, *rev. denied* 227 Kan. 927 (1980). We hold that the district court's order of 100% work disability is supported by substantial competent evidence.

Affirmed.