(706 P.2d 476)
No. 57,305

WILFORD B. MASTIN, *Appellant*, v. THE KANSAS POWER AND LIGHT COMPANY, *Appellee*.

—

Opinion filed September 26, 1985.

*Patrick R. Barnes*, of Scott, Quinlan & Hecht, of Topeka, for appellant.

*Steven Carr*, of Kansas Power & Light Company, of Topeka, for appellee.

Before PARKS, P.J., REES, J., and JEROME HARMAN, C.J. Retired, Assigned.

REES, J.: In this negligence action, plaintiff Wilford B. Mastin appeals from a summary judgment entered against him on his claim for damages suffered as the result of the operation of his combine under a sagging Kansas Power & Light Company (KP&L) power line. The dispositive issue is whether there exists a genuine issue as to the material fact of defendant KP&L's pre-accident knowledge that its line sagged excessively so as to preclude entry of summary judgment. We reverse.

In the early evening of July 2, 1981, Mastin was combining wheat on his property in rural Shawnee County. He was injured when he drove his combine under a KP&L high voltage power line that sagged excessively and the CB radio antenna attached to his combine came in contact with the line.

Mastin alleged in his petition that KP&L maintained the power line in a negligent manner. In its answer, KP&L denied "that it knew or should have known of any negligence in the maintenance of said power line." By written interrogatory, KP&L asked that Mastin state the facts upon which he relied to substantiate his allegation and that plaintiff identify who would substantiate those facts. In answer to the interrogatory, Mastin stated that "Defendant was aware of the condition since it had been reported to Defendant prior to the incident." He identified

David Stoll as the person upon whom he relied to substantiate that fact.

Mastin's deposition was subsequently taken by KP&L. In it, Mastin testified that in a conversation he had with Stoll after the accident, Stoll "stated to me that he had reported that low power line before this happened"; that Stoll "said he noticed the power lines low and he had reported it, that's what he told me, to KP&L."

KP&L moved for summary judgment. It conceded that the line in question was four or five feet too low but it argued that that fact standing alone did not establish negligence on its part. KP&L contended it had no actual or constructive notice of excessive sag in the line prior to Mastin's accident.

With its motion for summary judgment KP&L filed an affidavit executed by its local division superintendent, J. V. Eakins, in which Eakins stated "KPL had no notice or knowledge of the condition of [the] power line involved in the accident prior to the plaintiff's contact with the line." In its summary judgment memorandum, KP&L stated that it "has denied plaintiff's claims and denies liability because *inter alia* it had no notice of the condition of the power line prior to the incident which is the subject of the litigation." Citing Eakins' affidavit, it stated as claimed uncontroverted facts that "[p]laintiff has no evidence to offer that [KP&L] had any notice of the condition of the line prior to the accident" and that KP&L "had no notice or knowledge of the condition of the power line involved in the accident prior to the plaintiff's contact with the line."

In his response to KP&L's memorandum, and citing his own deposition, Mastin controverted those claimed uncontroverted facts saying in part that "Mr. Stoll told Mr. Mastin that before the incident of July 2, 1981, he had noticed the power lines in question were low and he reported this condition to KP&L." He forthrightly conceded that "Mr. Stoll's version of the conversation is that he noticed the power lines in question were too low, but did not notify KP&L." That concession was the product of a statement in an affidavit given by Stoll that "[p]revious to Mr. Mastin's accident, I noticed the power lines which Mr. Mastin has indicated he ran into seemed too low, but I did not notify the Kansas Power and Light Company." (Commendably, Mastin's counsel disclosed this affidavit of Stoll's to the trial judge and

defense counsel. It had been executed long after Mastin's deposition was taken.)

After reviewing the pleadings, the deposition, the answers to interrogatories and the affidavits, the trial judge found that Mastin had "brought forth no evidence of negligence on the part of [KP&L]"; that Mastin "has only alleged the power line was 'too low' "; and that Mastin has "no evidence to show that [KP&L] had notice of the condition of the line, either actual or constructive, prior to the accident." The trial judge concluded that the "record shows no genuine issue as to any material fact exists" and entered summary judgment in favor of KP&L.

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c); *Lostutter v. Estate of Larkin*, 235 Kan. 154, 164, 679 P.2d 181 (1984). When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, 260-61, 662 P.2d 1203 (1983). In a negligence case, the presence or absence of negligence is ordinarily not a question for judicial resolution on summary judgment. Resolution of the question ordinarily is for determination by the trier of fact. It is only when it can be said that reasonable persons cannot reach differing conclusions from the same evidence that a material fact question may be decided as a matter of law. *Pedi Bares, Inc. v. First National Bank*, 223 Kan. 477, 482, 575 P.2d 507 (1978); *Every v. Jefferson Ins. Co. of N.Y.*, 4 Kan. App. 2d 715, 717, 610 P.2d 645 (1980). When a motion for summary judgment is filed, a mere surmise or belief by the trial court, no matter how reasonably entertained, that a party cannot prevail upon a trial, will not justify refusing that party his day in court. *McAlister v. Atlantic Richfield Co.*, 233 Kan. at 257.

The scope of the duty of electric utility companies such as KP&L has been set forth many times in the opinions of our Supreme Court. Companies which erect and maintain lines for the transmission of electricity are under a duty to exercise the highest degree of care to protect the public from danger. *E.g., Powers v. Kansas Power & Light Co.*, 234 Kan. 89, 96, 671 P.2d

491 (1983); *Worley v. Kansas Electric Power Co.*, 138 Kan. 69, 23 P.2d 494 (1933). The care required of electricity distributors is that care which would be exercised by prudent persons engaged in the industry, under like conditions and commensurate with the dangers involved and the practical operation of the plant, to guard against contingencies which can be reasonably foreseen and anticipated, but such distributors are not liable for occurrences which cannot be reasonably anticipated and they are not insurers against accidents and injuries. *E.g., Wilson v. Kansas Power & Light Co.*, 232 Kan. 506, 510, 657 P.2d 546 (1983); *Murphy v. Central Kansas Electric Cooperative Ass'n*, 178 Kan. 210, 284 P.2d 591 (1955). The rationale for holding electricity distributors to such a stringent standard of care focuses on the dangerousness of the instrumentality:

"A high-voltage power line is one of the most dangerous things known to man. Not only is the current deadly, but the ordinary person has no means of knowing whether any particular wire is carrying a deadly current or is harmless." *Henderson v. Kansas Power & Light Co.*, 184 Kan. 691, 695, 339 P.2d 702 (1959).

In this case, the propriety of the entered summary judgment hinges upon whether the conflicting statements concerning pre-accident notice to KP&L of the power line's condition create a genuine issue on the material fact of KP&L's pre-accident knowledge. Since Mastin in his argument does not imply—nor permit us to infer—that KP&L negligently created the excessive sag in the line, proof that KP&L was negligent requires a showing it had actual or constructive notice of the dangerous condition. *Cf. Little v. Butner*, 186 Kan. 75, 81, 348 P.2d 1022 (1960).

On the question whether KP&L had pre-accident actual or constructive notice, it is clear to us that the hearsay evidence presented in Mastin's deposition—Mastin's recitation of Stoll's declaration that he had notified KP&L that its line was low—created a genuine issue as to that material fact. Our conclusion is supported by the rule requiring that the record must be viewed in the light most favorable to Mastin. *Barnhart v. McKinney*, 235 Kan. 511, 516, 682 P.2d 112 (1984). But did Stoll's affidavit stating that he did not notify KP&L automatically and wholly disprove the truth of the matter stated in the reported declaration? On this question, the substance of KP&L's position on appeal is that Stoll's personal refutation of the reported declaration (that Stoll notified KP&L of the low line) destroys any claim

by Mastin that there is evidence that KP&L had pre-accident notice of the low line. What KP&L has argued to us, and all that it has said in this regard, is that:

"Plaintiff's self-serving statement of his recollection that Stoll had told him he had reported the condition contrasted with Stoll's sworn testimony that *he did not report* the condition prior to the accident does not raise any material fact issue, as plaintiff argues: plaintiff eliminated the issue of notice with the evidence he offered."

Why is that necessarily so? KP&L does not enlighten us; it offers no supporting explanation or authority.

Under Kansas hearsay evidence rules, Mastin's testimony that Stoll said he notified KP&L *could* be admissible hearsay evidence in the nature of affirmative proof that KP&L had notice. K.S.A. 60-460(a) (evidence of previous statements of a declarant present and available for cross-examination is admissible hearsay evidence); 4 Vernon's Kansas C. Civ. Proc. § 60-460, pp. 415-16 (1965); 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-460, p. 230 (1979). Stoll's affidavit, which conflicts with the hearsay evidence in Mastin's deposition, left for jury resolution the question whether KP&L had actual pre-accident notice from Stoll. 4 Vernon's Kansas C. Civ. Proc. § 60-460, pp. 415-16. There is no basis to find as a matter of law that the truth lies in the sworn admissible statement of Stoll rather than in Mastin's sworn admissible report of Stoll's declaration, or vice versa. To find either way would require the trial judge and us to pass on credibility and to balance and weigh evidence, action that the trial judge and we must not engage in on summary judgment motions. *Caplinger v. Carter*, 9 Kan. App. 2d 287, 293, 676 P.2d 1300, *rev. denied* 235 Kan. 1041 (1984).

In short, "[s]ummary judgment should not be used to prevent the necessary examination of conflicting testimony and credibility in the crucible of a trial." *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980).

The conflicting sworn statements of Stoll and Mastin leave a genuine issue as to the material fact question whether KP&L had notice of the concededly low line. Summary judgment was incorrectly entered. *Lostutter v. Estate of Larkin*, 235 Kan. at 164.

Reversed.