(176 P.3d 197)
No. 97,355

RAYMOND DREILING, Individually, and as Administrator of the Estate of LORETTA DREILING, deceased, *Appellant*, v. W. DUNCAN DAVIS, M.D., KENNETH AUSTIN, M.D., and GOODLAND REGIONAL MEDICAL CENTER OF GOODLAND, KANSAS, *Appellees.*

Opinion filed January 18, 2008.

*Donald F. Hoffman,* of Dreiling, Bieker & Hoffman, LLP, of Hays, for appellant.

*Kaylene Brin* and *Kenneth C. Havner,* of Havner & Brin, of Hays, for appellee Kenneth Austin, M.D.

*Michael R. O'Neal* and *Shannon L. Holmberg,* of Gilliland & Hayes, P.A., of Hutchinson, for appellee Goodland Regional Medical Center.

*Brian C. Wright,* of Law Office of Brian C. Wright, of Great Bend, for appellee W. Duncan Davis, M.D.

Before MARQUARDT, P.J., LEBEN, J., and KNUDSON, S.J.

MARQUARDT, J.: Raymond Dreiling, individually, and as administrator of the Estate of Loretta Dreiling, appeals the grant of summary judgment in a medical malpractice wrongful death case. We dismiss in part, reverse in part, and remand for further proceedings.

On February 25, 2002, Dr. Duncan Davis performed a laparoscopic cholecystectomy (gallbladder removal) on 70-year-old Loretta at Goodland Regional Medical Center of Goodland, Kansas (Goodland Regional). Dr. Kenneth Austin, Loretta's long-time doctor, assisted Dr. Davis in the surgery.

On March 1, 2002, Loretta died. Dr. Davis issued a death certificate on March 11, 2002, stating that Loretta's cause of death was "acute/fulminant liver failure," with a secondary diagnosis of nodular cirrhosis. Raymond testified that "[t]he funeral director told us that an autopsy probably would not be helpful" and no autopsy was performed at that time.

A month after Loretta's death, in April 2002, Raymond spoke with his attorney about Loretta's death. In May 2002, Raymond contacted a law firm and asked them to investigate Loretta's death; however, a month later, that law firm declined to pursue a claim. Four and one-half months after Loretta's death, another attorney wrote that he and his associate were unable to determine the specific cause of death from Loretta's medical records and recommended an autopsy be performed.

Raymond had Loretta's body exhumed, and on August 9, 2002, Dr. Hubert Peterson conducted an autopsy. Dr. Peterson found severe micronodular cirrhosis in Loretta's liver but concluded that Loretta's cause of death was acute progressive pulmonary disease and acute bronchopneumonia.

On May 14, 2004, more than 2 years after Loretta's death, Raymond filed suit against Dr. Davis, Dr. Austin, and Goodland Regional claiming that Loretta's death was caused by medical malpractice. Raymond alleged that "as a result of the autopsy by Dr. Peterson, [he] first learned of the true cause of his wife's death in August, 2002." All defendants asserted in their answers, among other defenses, that Raymond's claim was barred by the statute of limitations.

The district court denied defendants' initial motions for summary judgment in 2005 because a genuine issue of material fact remained as to when the fact of death or negligence was reasonably ascertainable. In June and July 2006, after discovery had closed, all defendants filed supplemental or renewed motions for summary judgment.

In a joint response to all motions, Raymond maintained that summary judgment should not have been granted because Dr. Davis and Dr. Austin knew the actual cause of Loretta's death but prepared a false death certificate, "thereby concealing the true cause of her death." Raymond argued that the 2-year statue of limitations of K.S.A. 60-513(a) did not accrue on the date of Loretta's death, and under K.S.A. 60-513(c) the statute of limitations was tolled because:

"The negligence that caused Loretta's death was not reasonably ascertainable until her body was exhumed and an autopsy performed. At that point in time, the

Plaintiff learned the true cause of his wife's death. Therefore, the causal connection between the injury and the negligence of the Defendants was not identifiable (at the earliest) until August 23, 2002, the date of the autopsy report. It then became clear to the Plaintiff that the Defendants Austin and Davis had concealed the true reason for [Loretta's] death."

Raymond set forth the details of the legal investigation he undertook, claiming the inaccurate and misleading certificate of death thwarted any "meaningful" investigation. Raymond maintained, "[a]t the very least, the statute of limitations accrued when [the first lawyer he consulted] informed [him] that [the lawyer's] firm was not interested in pursuing the medical malpractice claim but informed him to seek a second opinion before deciding." In closing, Raymond argued that the issue of when the cause of action accrued should be decided by a jury.

To support Raymond's arguments, he presented the following evidence:

(1) His own affidavit stating that Dr. Davis "prepared a Certificate of Death stating that [Raymond's] wife died from acute/fulminant liver failure," and "it is [his] belief that Dr. Duncan Davis and other defendants named [t]herein knew the reason for [his] wife's death but prepared a false death certificate stating that she died from cirrhosis rather than pneumonia."

(2) Dr. Peterson's autopsy report.

(3) A June 2005 affidavit from Dr. Peterson, indicating that he determined Loretta's cause of death "to be acute progressive pulmonary disease, acute bronchopneumonia, and not cirrhosis."

(4) An affidavit from Raymond's attorney acknowledging that when he composed his July 21, 2003, notice of claim letter to Goodland Regional pursuant to K.S.A. 12-105b(d), he "was under the impression that the statute of limitations for [Raymond's] claim would run on March 1, 2004, that being two years from the date of his wife's death." However, "after further investigation it was brought to [counsel's] attention that the statute of limitations for [the] claim would actually run two years from the date that [Raymond] reasonably ascertained the fact of the injury to his deceased wife was due to the defendants' negligence, that being August 23, 2004, two years from the date of the autopsy report of Dr. Peterson."

On August 15, 2006, the district court granted summary judgment to all defendants, concluding, in pertinent part, that the action was barred by the 2-year statute of limitations because the fact of injury was reasonably ascertainable as of the date of Loretta's death. Raymond timely appealed.

K.S.A. 60-513(a)(4), (5), and (7) provide that negligence, wrongful death, and medical malpractice actions must be brought within 2 years. The sole issue here is whether the district court properly granted summary judgment, finding that as a matter of law, Raymond's cause of action accrued on March 1, 2002, the date of Loretta's death.

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c). Although the burden of pleading and proving the applicability of the affirmative defense of statute of limitations rests on the defendant, the plaintiff bears the burden of proving facts sufficient to toll the statute of limitations. *Slaydon v. Sixta*, 250 Kan. 23, 26, 825 P.2d 119 (1992). Summary judgment may be proper where there is no dispute or genuine issue as to the time when the statute commenced to run. *Biritz v. Williams*, 262 Kan. 769, 772, 942 P.2d 25 (1997). On appeal, we review the evidence and reasonable inferences that can be drawn therefrom in the favor of the party that defended against the motion for summary judgment. If reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. *Biritz*, 262 Kan. at 772.

K.S.A. 60-513(c) provides:

"A cause of action arising out of the rendering of or the failure to render professional services by a health care provider shall be deemed to have accrued at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of action."

This court has unlimited review of the district court's interpretation and application of K.S.A. 60-513 to uncontroverted facts. *Davidson v. Denning*, 259 Kan. 659, 667, 914 P.2d 936 (1996).

In granting summary judgment, the district court relied upon our Supreme Court's decision in *Davidson*, which addressed how K.S.A. 60-513 applies in wrongful death actions. *Davidson* held, *inter alia*:

"(a) The 'discovery rule,' as codified in subparagraphs (b) and (c) of K.S.A. 60-513, expressly applies to the 2-year wrongful death limitation at 60-513(a)(5).

"(b) The term 'reasonably ascertainable,' as applied in 60-513(b) and (c) in a wrongful death case, suggests an objective standard based on an examination of the surrounding circumstances.

"(c) K.S.A. 60-513(b) and (c) provide that the limitations period starts when the 'fact of injury' becomes 'reasonably ascertainable.' Inherent in 'to ascertain' is 'to investigate.' 'Reasonably ascertainable' does not mean 'actual knowledge.' The 'fact of injury' in a wrongful death action means the 'fact of death.' The limitations period should start on the date of death *unless the information from which the fact of death or negligence can be determined was either concealed, altered, falsified, inaccurate, or misrepresented.* The fact of death should be a starting point for inquiry. The wrongful death plaintiff is charged with constructive knowledge of information that is available through a reasonable investigation of sources that contain the facts of the death and its wrongful causation." (Emphasis added.) 259 Kan. 659, Syl. ¶ 2.

Here, the district court noted the uncontroverted facts that Raymond consulted an attorney within a month after Loretta's death and engaged counsel to pursue a medical malpractice action on or before May 9, 2002. The district court concluded:

"The Plaintiff has been unable to come forth with evidence showing that the information from which the facts of death or negligence could be determined was either concealed, altered, falsified, inaccurate, or misrepresented. To the contrary, the uncontroverted fact that the plaintiff retained legal counsel to pursue a medical malpractice action with[in] 69 days of his wife's death reveals that the fact of death or negligence was neither concealed, altered, falsified, inaccurate or misrepresented."

On appeal, Dr. Austin and Dr. Davis focus on Raymond's early discussions with a medical investigator about Loretta's death. Dr. Austin argues that the facts in *Davidson* are analogous to the instant case.

The facts are not analogous. In *Davidson*, the widow spoke with an investigator in her counsel's office less than a month after her husband's death, at which time she became aware of possible negligent causation which "suggest[ed] at least suspicion that something was wrong." 259 Kan. at 675-76.

*Davidson* did not establish a bright line rule that the wrongful death limitations period may never be extended beyond 2 years from the date of death. 259 Kan. at 679. Rather, under the facts of the cases before it, the court concluded there were no circumstances justifying an extension under K.S.A. 60-513(c), "such as concealment of the fact of death or of medical records [or] a misrepresentation, alteration, inaccuracy, or falsification of any type." 259 Kan. at 679. Thus, in *Davidson*, there was no claim or allegation of any sort of concealment, alteration, or falsification of the medical records, nor was there any suggestion that medical personnel had made any inaccurate or misleading representations concerning the cause of death.

Here, Raymond focuses on the alleged misrepresentation or inaccurate statement concerning Loretta's cause of death certified by Dr. Davis, claiming it should extend the statute of limitations.

The facts that compelled the exhumation of Loretta's body 5 months after her death are not revealed in the record on appeal. The only explanation offered by Raymond is that the funeral director told him an autopsy probably would not have been helpful. Raymond has not alleged he was prevented from obtaining an autopsy because of something the defendants did or failed to do. This seems to lead to the question of whether Raymond acted reasonably in not requesting an autopsy when he was admittedly suspicious about Loretta's death. In other words, should Raymond be charged with constructive knowledge of what the autopsy ultimately revealed as of the date of Loretta's death because it was an available source for investigation?

Generally, reasonableness is a fact question. It is only when it can be said that reasonable persons cannot reach differing conclusions from the same evidence that a material fact question may be decided as a matter of law. *Mastin v. Kansas Power & Light Co.*, 10 Kan. App. 2d 620, 622, 706 P.2d 476 (1985). Resolution of this

issue will likely involve credibility determinations, and it appears reasonable persons could reach different conclusions. The district court erred in granting summary judgment to Dr. Davis and Dr. Austin and that issue is reversed and the case is remanded for further proceedings.

Raymond moved this court to dismiss Goodland Regional as an appellee. In his brief, filed the same day as his motion, Raymond "acknowledges that the trial court was correct in dismissing [his] claim against Defendant Goodland Regional Medical Center pursuant to K.S.A. 40-3403(h)." This court denied the motion to dismiss. Goodland Regional filed a brief, which includes this issue.

Raymond's and the estate's claims against Goodland Regional appear to be for direct negligence, not vicarious liability for the actions of Dr. Davis and Dr. Austin. Goodland Regional is, therefore, dismissed.

Dismissed in part, reversed in part, and remanded for further proceedings.