NOT DESIGNATED FOR PUBLICATION

No. 120,061

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LANIER TRUCKING, INC., STEVEN LANIER,
*Appellants*,

v.

JAMES J. LONG,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed August 14, 2020. Affirmed.

*Brian C. Wright*, of Wright Law Office, Chartered, of Great Bend, for appellants.

*Michelle Moe Witte*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellee.

Before MALONE, P.J., MCANANY, S.J., and BURGESS, S.J.

PER CURIAM: James J. Long provided legal representation for Lanier Trucking, Inc. (LTI), a company in which Steven Lanier was 50 percent owner. Through transactions that involved Elvis Lundquist, who owned the other 50 percent of LTI, Long acquired ownership interest in companies that potentially had interests adverse to LTI. Lanier and LTI sued Long for legal malpractice and breach of fiduciary duty, but the district court dismissed the case for lack of prosecution. After Lanier and LTI refiled the suit, the district court granted three motions for summary judgment in Long's favor. Lanier and LTI appeal those rulings, arguing that the district court misapplied statutes of

1

limitations, Kansas' savings statute, and the standard for deciding a motion for summary judgment. Finding no error, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Lanier and Lindquist each own 50 percent of LTI. Lindquist also owned a company called Elite Transportation (Elite) and in 2012, at Lindquist's request, Long formed another company called Elite Dedicated Services, LLC (EDS). Long had an ownership share in EDS and was paid to manage EDS, but he did not provide EDS with legal representation. Also in 2012, Lanier and Lindquist agreed to move some of LTI's customers to Elite. Under this agreement, LTI and Elite shared some expenses, such as labor and fuel, but held separate bank accounts.

In January 2013, Long was attorney of record for LTI in a lawsuit brought against RESS Properties, LLC (RESS), referred to as the RESS lawsuit. At the time, Lanier and Lindquist each owned one-third of RESS; Sunflower Investments, LLC (Sunflower) owned 30 and one-third percent of RESS; and Randy Burris owned 3 percent of RESS. In August 2013, Lindquist, who was LTI's point of contact with Long, directed Long not to pursue the RESS lawsuit; a settlement agreement was pending.

In September 2013, before a settlement agreement was executed, Lindquist asked Long if he was interested in acquiring an interest in RESS; Long said he might be. Lanier later executed an assignment of interest that purported to transfer LTI's interest in RESS to Lindquist, even though LTI had no interest in RESS to transfer. Despite the wording of the assignment, Lindquist said he would transfer Lanier's interest in RESS to Long.

On October 1, 2013, representatives of LTI and RESS—including Lanier—signed a settlement agreement abandoning LTI's claims against RESS. Also under that settlement agreement, Sunflower transferred its interest in RESS to EDS. Burris sold his

2

interest in RESS to Lindquist, and Lindquist transferred a 40 percent interest in RESS to Long. So as of January 2014, Long and Lindquist were the sole owners of RESS. On February 19, 2014, the district court dismissed the RESS lawsuit for lack of prosecution.

Long continued to provide legal representation for LTI through at least January 2015, representing LTI in at least two cases that went to trial. Also through 2015, Long continued working with EDS and he oversaw Elite's accounting and bookkeeping. At least once, Long authorized payment of revenue generated by LTI into a bank account held by EDS. Along with LTI revenue, some revenue generated by Elite was deposited into EDS's account. In July 2014, Lanier wrote to the Kansas Disciplinary Administrator's Office and informed them that he believed Long was improperly funneling payments into EDS's bank account. Also in 2014, Lanier agreed to move LTI's remaining customers to Elite; LTI ceased operation in August 2015.

On February 19, 2016, Lanier and LTI sued Long, alleging legal malpractice related to Long's actions in the RESS lawsuit and breach of a fiduciary duty Long owed to both Lanier and LTI. To the extent that the specific claims raised in this lawsuit, referred to as *Lanier I*, are relevant to this appeal, they are detailed in the analysis below. On November 15, 2016, the district court dismissed *Lanier I* for lack of prosecution.

On March 16, 2017, Lanier and LTI refiled the lawsuit, referred to as *Lanier II*. Generally, Lanier and LTI's claims in *Lanier II* were of legal malpractice and breach of fiduciary duty arising from two categories of circumstances—those related to Long's action or inaction involving RESS and those unrelated to RESS.

On August 1, 2017, Long filed a motion for partial summary judgment arguing that LTI's RESS-related claims of legal malpractice and breach of fiduciary duty were barred by the applicable two-year statute of limitations in K.S.A. 60-513(a)(4). Long contended that LTI's RESS-related claims accrued on October 1, 2013, when the parties

3

signed the settlement agreement to resolve the RESS lawsuit, so the statute of limitations expired October 1, 2015, over four months before *Lanier I* and over two years before *Lanier II*. Lanier and LTI disagreed, contending that the continuing representation rule tolled the statute of limitations.

On September 13, 2017, Long filed a "Second Amended Motion for Partial Summary Judgment and for the Dismissal of Steven Lanier as a Party Plaintiff." Long argued that Lanier's personal claims for legal malpractice and breach of fiduciary duty were barred by the two-year statute of limitations and that Lanier lacked standing to bring an individual action for harm LTI suffered. Lanier responded to this motion, arguing that summary judgment would be improper because material facts remained controverted.

The district court held a hearing on October 26, 2017, at which it addressed Long's second amended motion for partial summary judgment. After hearing argument, the district court ruled from the bench that there was no attorney/client relationship between Long and Lanier, so Lanier could not pursue a legal malpractice claim. Thus, the district court granted summary judgment in Long's favor and dismissed all of Lanier's legal malpractice claims, whether they stemmed from RESS-related or non-RESS-related facts.

As for Lanier's breach of fiduciary duty claims, the district court found that Lanier had "not come forward with facts sufficient to create a question of fact that Long owed a fiduciary duty to Steve Lanier over the RES[S] transaction." The district court granted summary judgment in Long's favor on Lanier's RESS-related breach of fiduciary duty claim. But to the extent that Lanier brought claims for a non-RESS-related breach of fiduciary duty, the district court denied summary judgment as premature and did not decide whether Long had a non-RESS-related fiduciary duty to Lanier. The district court later issued a minute order incorporating by reference the reasons articulated at the October 26, 2017 hearing.

4

In November or December 2017, the district court held a hearing on Long's August 2017 motion for partial summary judgment, but the record on appeal contains no transcript of that hearing. In any event, on January 16, 2018, the district court issued its written memorandum and order on Long's first motion for partial summary judgment, which sought summary judgment on LTI's claims and a ruling that Lanier lacked authority to bring claims on LTI's behalf. The district court found that Lanier could bring *Lanier II* on behalf of LTI. Next, the district court found that the statute of limitations for LTI's RESS-related claims against Long began to run on October 1, 2013, at the latest, so the statute of limitations barred those claims. But the district court found that to the extent that LTI's claims were unrelated to RESS, summary judgment was premature as discovery was still ongoing. Thus, the district court granted partial summary judgment in Long's favor "on LTI's claims for malpractice and breach of fiduciary duty but only on the claims arising out of the RESS litigation and the acquisition of the interest in RESS."

On April 23, 2018, Long filed a motion for summary judgment on LTI's breach of fiduciary duty claim. Long again argued that the statute of limitations barred this claim, which stemmed from allegations about the formation of EDS and funds that should have been paid to LTI being directed to EDS. It appears the district court held a hearing on the motion on August 2, 2018, but the record on appeal contains no transcript.

On August 7, 2018, the district court issued its written order on the motion, granting summary judgment in Long's favor on LTI's non-RESS-related breach of fiduciary claim as barred by the statute of limitations. The district court rejected LTI's argument that the Kansas savings statute applied to save *Lanier II*, and it rejected LTI's argument that the later asserted breaches began the statute of limitations period anew.

On September 6, 2018, Lanier and LTI filed a notice of appeal from the three partial summary judgment rulings described above. On June 30, 2020, this court issued a show-cause order noting that the record does not contain final judgment on all the claims

against Long, nor does it reflect that LTI and Lanier sought to take an interlocutory appeal. The parties responded to the show-cause order and agreed at oral argument that the district court's findings on the rulings granting partial summary judgment necessarily resolved any remaining claims. We retain jurisdiction over this appeal on that basis.

*Did the district court err by finding that Long was entitled to summary judgment because Lanier had failed to sufficiently show that Long owed him a fiduciary duty?*

Lanier first argues that the district court erred by granting summary judgment in Long's favor on Lanier's RESS-related breach of fiduciary duty claims. Lanier contends, contrary to the district court's holding, that he presented sufficient facts to the district court to adequately dispute Long's assertion that he owed Lanier no fiduciary duty during the RESS transactions. Lanier also asserts that he presented evidence that Long breached that fiduciary duty. Thus, he asks this court to reverse the order of summary judgment and remand for further proceedings.

Long argues that he owed no fiduciary duty to Lanier individually and that the district court correctly granted partial summary judgment in Long's favor on those claims. Long also contends that, even if the district court erred in finding he owed Lanier no fiduciary duty, the applicable statute of limitations barred Lanier's individual breach of fiduciary duty claims.

> "We review a district court's grant of summary judgment de novo and read the record under the same rules applicable to the district court.
>
> """Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude

6

summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied.'"' [Citations omitted.]" *Hill v. State*, 310 Kan. 490, 512-13, 448 P.3d 457 (2019).

Here, the district court found that the existence of a fiduciary duty is generally a question of fact. The district judge also found:

"When faced with a Motion for Summary Judgment on plaintiff's claims as I said before the plaintiff cannot just stand pat and say we deny it or controvert. You must come forward with facts sufficient to withstand summary judgment. That would be both on the existence of a fiduciary duty and the dates of the fact of injury.

"As I mentioned before with the full RES[S] transaction Steve Lanier has not come forward with facts sufficient to create a question of fact that Long owed a fiduciary duty to Steve Lanier over the RES[S] transaction."

In general, Kansas courts recognize two types of fiduciary relationships:  those created by contract and those implied in law because of the circumstances of the parties' relationships and the transactions involved. *Rail Logistics, L.C. v. Cold Train, L.L.C.*, 54 Kan. App. 2d 98, 115, 397 P.3d 1213 (2017) (quoting *Denison State Bank v. Madeira*, 230 Kan. 684, 691, 640 P.2d 1235 [1982]). Lanier does not contend that a contract created Long's fiduciary duty to him, so any such duty must be implied by law. As Lanier notes, certain circumstances may show a fiduciary relationship:

"[T]he acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another. In addition, courts have considered weakness of age, mental strength, business intelligence, knowledge of the facts involved or other conditions giving to one an advantage over the other." *First Bank of Wakeeney v. Moden*, 235 Kan. 260, 262, 681 P.2d 11 (1984).

7

Lanier offers the following—without citation to the record—as evidence that Long owed him a fiduciary duty:

- Because he legally represented LTI, was involved in accounting and bookkeeping for LTI, and worked for Elite, Long "was in a position of superior knowledge and understanding compared to Lanier."
- Lanier "understood that Long was acting in his interest . . . due to Long's long-standing representation of LTI for several years."
- Lanier placed special confidence in Long to safeguard LTI's interests, which left Long "bound to act in good faith and with due regard to the interest of Steve Lanier."
- Based on Long's relationship with LTI, a corporation "Lanier had founded and [which] provided Lanier with his living," Lanier reasonably expected "to be treated fairly" by Long in his personal dealings.

After making these assertions, Lanier focuses his argument on whether Long breached his fiduciary duty to Lanier, citing various provisions of the Kansas Rules for Professional Conduct with which he argues Long did not comply. But even if Lanier presented the district court with evidence to support all of these factual assertions—which largely boil down to Lanier believing that Long owed him a fiduciary duty because Long represented LTI and was better versed in the law than Lanier—this is not sufficient to dispute Long's assertion that no fiduciary relationship existed. Put simply, Lanier provided only evidence that he believed Long owed him a duty.

In *Dana v. Heartland Mgmt. Co.*, 48 Kan. App. 2d 1048, 1066, 310 P.3d 772 (2013), this court reviewed a district court's summary judgment in the defendants' favor on a breach of fiduciary duty claim. The plaintiffs argued to this court that the district court erred in granting summary judgment because they had presented evidence that "a fiduciary relationship existed between the parties due to the trust and confidence they

8

placed in the defendants." 48 Kan. App. 2d at 1066. In rejecting the argument, this court noted that courts do not presume a fiduciary relationship exists, and "[a] party may not 'unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary.'" 48 Kan. App. 2d at 1067.

Likewise, Lanier cannot unilaterally impose on Long a fiduciary relationship and the accompanying duties owed; Long must have consciously assumed such duties. Lanier provided no evidence that Long did so, and a review of the record reveals no evidence that could create a dispute about whether Long and Lanier had a fiduciary relationship that gave rise to Long owing Lanier a fiduciary duty. Moreover, the evidence Lanier offers of a fiduciary relationship stems from Long's status as legal counsel for LTI. This court has recognized that "as a general legal principle, attorneys representing corporations owe no duty to third-party shareholders." *Miller v. Staab*, No. 91,931, 2005 WL 1429834, at *4 (Kan. App. 2005) (unpublished opinion); see also *White v. Barbieri*, No. 106,078, 2012 WL 3966527, at *4 (Kan. App. 2012) (unpublished opinion) (citing *Miller*).

Thus, the district court properly found that Lanier failed to come forward with evidence that Long consciously assumed any fiduciary duties to Lanier, so the district court did not err in granting summary judgment to Long on this claim. We need not address Long's alternative argument that any breach of fiduciary duty claim by Lanier against Long is barred by the applicable statute of limitations.

*Did the district court err by finding that LTI's RESS-related claims were barred by the statute of limitations?*

LTI argues that the district court erred by granting summary judgment after finding that the applicable statute of limitations barred its RESS-related claims against Long. The "continuous representation rule" provides that in some cases, a claim based on

the breach of a duty an attorney legally owed his or her client "'does not accrue until the attorney-client relationship is terminated.'" *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 631, 355 P.3d 667 (2015). LTI claims that the continuous representation rule tolls the statute of limitations for both its legal malpractice and fiduciary duty claims against Long so that the two-year period did not begin to run until at least February 2015. Long disagrees, arguing that the district court correctly found that LTI's RESS-related claims were barred by the statute of limitations.

We have set forth our standard of review when the district court grants summary judgment. See *Hill*, 310 Kan. at 512-13. "Likewise, the 'interpretation and application of a statute of limitations is a question of law over which an appellate court exercises unlimited review.'" *Garcia v. Ball*, 303 Kan. 560, 571, 363 P.3d 399 (2015). And whether the continuous representation rule applies to toll a statute of limitations "depends upon the facts and circumstances of each case." *Mashaney*, 302 Kan. at 631.

In district court, LTI argued that even if the statute of limitations for its RESS-related claims began running on October 1, 2013, with the signing of the settlement agreement for the RESS lawsuit, Long's continuing representation of LTI tolled that statute of limitations. In support, LTI pointed out Long's 2013 through 2015 representation of LTI in a lawsuit with the Butler Group. But Long successfully argued to the district court that the continuous representation rule is matter-specific, so it does not apply to preserve LTI's RESS-related claims because Long's RESS-related representation of LTI ended in 2013, even though Long continued to represent LTI in other matters.

LTI does not acknowledge on appeal that the district court relied on the matter-specific nature of the continuous representation rule, nor does LTI argue on appeal that the district court erred in holding that the continuous representation rule is matter-specific. LTI also does not argue that if the continuous representation rule does not apply, there is some other way to preserve its RESS-related claims against Long. Rather, LTI

10

contends generally that the continuous representation rule saves its claims and that the district court was "unnecessarily concerned" about the effect of the continuous representation rule on large law firms and corporations.

Because LTI does not argue that the district court erred by holding that the continuous representation rule is matter-specific—the holding on which the district court's granting summary judgment on this issue hinged—LTI has waived any such argument. See *Lambert v. Peterson*, 309 Kan. 594, 598, 439 P.3d 317 (2019) ("Because of [the appellant's] failure to brief or assert any of these arguments before us, she has waived or abandoned them."). For this reason alone, LTI's claim that Long's continuous representation preserved its legal malpractice and breach of fiduciary duty claims fails.

Even so, we will address LTI's argument in its brief that we should reverse the district court's judgment on this issue based on this court's recognition of the continuous representation rule in *Morrison v. Watkins*, 20 Kan. App. 2d 411, 889 P.2d 140 (1995). In that case, Dorothy M. Morrison, with help from attorney L. Earl Watkins, Jr., established the Dorothy M. Morrison Revocable Trust No. 1 (Trust) in 1979. Watkins and James Adams, a C.P.A., were co-trustees of the Trust along with Morrison. The Trust authorized any two of the three trustees to act for the Trust. Between 1979 and 1986, the Trust made several unfortunate investments. Watkins and Adams stated that Morrison received and reviewed financial statements for the Trust every six months and was aware of almost all the investments before or soon after they occurred, but Morrison claimed that she did not understand the financial statements and did not learn about the investments until later.

In 1986, Morrison hired another attorney, Henry McFadyen, who recommended that Morrison discharge Watkins and Adams as trustees, but she at first did not want to do so. Later, Morrison replaced Adams as co-trustee with her son, and she directed the trustees to sell certain investments and invest in different opportunities. Watkins

11

continued as a trustee and, in 1990, Morrison terminated her attorney-client relationship with McFadyen, "indicating that she was satisfied with the management of the Trust." 20 Kan. App. 2d at 415. In June of that year, Morrison terminated the Trust.

On October 18, 1991, Morrison sued Watkins and Adams, alleging that they had breached their fiduciary duties owed to her. The district court granted summary judgment for the defendants, finding in part that Morrison's claims against Watkins were barred by the statute of limitations. 20 Kan. App. 2d at 416.

On appeal, Morrison argued that the continuous representation rule tolled the statute of limitations on her claims until she revoked the Trust, thereby dismissing Watkins as a trustee. This court noted that although Morrison's case did not fit neatly within the framework of the continuous representation rule, other jurisdictions had applied the rule to claims against an attorney acting as a trustee. 20 Kan. App. 2d at 418. This court reasoned that "it would be irrational to require Morrison to file suit against the trustees for every investment as soon as she learned about it. Instead, Morrison should rightly be able to work with the other trustees in an attempt to recoup her losses and set straight the trust management." 20 Kan. App. 2d at 418.

Because Watkins was trustee and attorney for Morrison and the Trust until 1990, this court held that the statute of limitations did not bar her claims. 20 Kan. App. 2d at 418. This court also held that the district court erred in finding that Morrison hiring McFadyen interrupted the continuous representation when McFadyen advised her to fire Watkins and Adams because Morrison did not take that advice and decided to work with Watkins and Adams to rehabilitate the Trust. 20 Kan. App. 2d at 421.

LTI analogizes its circumstances to those in *Morrison*, first for the proposition that the continuous representation rule applies even outside the attorney-client relationship. LTI also argues that if Morrison's retention of another attorney who advised her to fire

12

Watkins did not interrupt the application of the continuous representation rule, neither should LTI's "knowledge or reason to know" about the actions that led to its claims in this case. LTI argues that its "level of concern" did not reach the level that Morrison presumably had upon being told to fire Watkins until July 2014, when Lanier complained to the disciplinary administrator about Long's behavior.

LTI misconstrues and misapplies *Morrison* and its holdings, and the facts in that case are materially distinguishable from the facts here. First, in *Morrison*, Watkin's fiduciary relationship with Morrison involved the same subject matter throughout the relationship—specifically, investments made by the Trust. Thus, in *Morrison*, the subject-matter limitation of the continuous representation rule was not implicated. But even the *Morrison* court noted: "'Where the attorney continues to represent the client *in the subject matter in which the error has occurred*, all such objectives [of the continuous representation rule] are achieved and preserved.'" (Emphasis added.) 20 Kan. App. 2d at 417. Here, although Long continued to represent LTI in other cases, it is undisputed that his representation in the RESS lawsuit ended on October 1, 2013.

Second, contrary to LTI's implied assertion in its brief, the question before the *Morrison* court was not the timing of Morrison's "level of concern." Rather, the question before the *Morrison* court was "whether Morrison's hiring of McFadyen in 1987 interrupted the continuous representation rule." 20 Kan. App. 2d at 418. Comparing the timing of LTI's "level of concern" as shown by Lanier's complaint to the disciplinary administrator's office to Morrison's hiring of McFadyen and consulting with him about the trustees' actions is not an apt comparison. Thus, even setting aside the subject-matter limitation of the continuous representation rule, LTI's assertion that *Morrison* requires this court to rule in its favor is unpersuasive. LTI fails to show that the district court erred by finding that its RESS-related claims were barred by the statute of limitations.

*Did the district court err by finding that the savings statute did not apply to LTI's non-RESS-related breach of fiduciary duty claims?*

K.S.A. 60-518, also known as Kansas' "savings statute," states: "If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff . . . may commence a new action within six (6) months after such failure." LTI and Lanier filed *Lanier I* on February 19, 2016, and it was dismissed for lack of prosecution on November 15, 2016. LTI and Lanier filed *Lanier II* on March 16, 2017.

The parties and the district court differently approached the analysis of the statute of limitations for non-RESS-related breach of fiduciary duty claims, so understanding the framing of the issue helps to understand the appellate arguments. The district court determined when a breach of fiduciary duty could have occurred and been timely pled in *Lanier II*. Long argued to the district court that *Lanier II* could only contain claims that accrued on or after March 16, 2015—two years before the filing of *Lanier II*. LTI, on the other hand, argued that *Lanier II* could contain claims that accrued on or after February 19, 2014—two years before it filed *Lanier I*—because the savings statute applied to allow *Lanier II* to raise claims timely raised in *Lanier I*.

The district court first determined that the savings statute did not apply because the claims in *Lanier I* and *Lanier II* were not substantially similar, so *Lanier II* could plead non-RESS-related breach of fiduciary duty claims only if the claims arose on or after March 16, 2015. Next, the district court turned to whether the non-RESS-related fiduciary duty claims pled in *Lanier II* fit within that timeframe, and it found that the facts giving rise to those claims were reasonably ascertainable to LTI by July 21, 2014— the date of a letter Lanier wrote to the Disciplinary Administrator's Office complaining about Long's involvement with Elite, EDS, and RESS. The district court also found that the facts before it showed that "Long's actions concerning EDS and the alleged injury to

14

LTI were known or reasonably known to Lanier in 2013" and because Lanier was a co-owner and co-manager of LTI, his knowledge is attributable to LTI. Thus, the district court concluded, "both Long's actions and the alleged injury to LTI were known or reasonably known to Lanier in 2013, more than two years before *Lanier I* and *Lanier II* were filed. Long's breaches of fiduciary duty were ascertainable in 2013."

On appeal, LTI argues only that the district court erred when it found that the non-RESS-related breach of fiduciary duty claims in *Lanier II* are not substantially similar to the breach of fiduciary claims pled in *Lanier I*. LTI contends that the breach of fiduciary duty claims in both lawsuits were substantially similar, so the savings statute applied to allow the *Lanier II* claims. Long disagrees, arguing that the similarity is irrelevant since the district court found that LTI's non-RESS-related breach of fiduciary duty claims arose more than two years before *Lanier I*, so they were barred in *Lanier I* and the savings statute does not apply to allow them to be refiled in *Lanier II*.

LTI does not directly challenge the district court's finding that all of Long's alleged breaches of fiduciary duty were reasonably ascertainable more than two years before *Lanier I*. As such, Long is correct—whether the district court erred in finding that the savings statute did not apply because the claims in *Lanier I* and *Lanier II* were not substantially similar is irrelevant. The savings statute would not apply here even if the claims in the two lawsuits were substantially similar since *Lanier I* was not timely commenced as to LTI's non-RESS-related breach of fiduciary duty claims. See K.S.A. 60-518 (the first lawsuit must be "commenced within due time"). As a result, LTI has not shown that it is entitled to any relief under the savings statute.

15

*Did the district court err by failing to consider whether each alleged non-RESS-related breach of fiduciary duty began a new statute of limitations period?*

LTI contends that the district court erroneously found that once LTI was aware of Long's wrongdoing in 2013, the statute of limitations began to run on Long's breaches of fiduciary duty, even those that occurred later. LTI argues that Long was engaged in a continuing tort and that his breach of fiduciary duty "continued for years, as EDS/Long/Lindquist/Elite failed to remit or account for LTI revenue or expense." LTI argues that the district court should have considered whether the statute of limitations had expired for each alleged breach of fiduciary duty, including those in 2014, 2015, and 2016. LTI asserts that "past knowledge cannot bar the right of LTI to assert damages for losses that occurred as part of the *ongoing scheme* to deprive LTI of revenue, income and assets" because "every tort or breach of duty is its own cause of action."

As Long points out, LTI provides no legal authority to support its argument. The district court had also noted that LTI did not cite any legal authority to support this argument. The only two cases LTI cites on this issue in its appellate brief are the cases cited for the standard of review for summary judgment and *Dreiling v. Davis*, 38 Kan. App. 2d 997, 176 P.3d 197 (2008), which is cited for the broad proposition that a statute of limitations defense is barred when the defendant was involved in activities designed to obscure the fact of injury. *Dreiling* concerned a wrongful death action, which the Kansas Supreme Court has held accrues when the fact of death becomes reasonably ascertainable "'unless the information from which the fact of death or negligence can be determined was either concealed, altered, falsified, inaccurate, or misrepresented.'" 38 Kan. App. 2d at 1002. LTI does not identify how Long tried to mislead or misdirect it with respect to breaches of fiduciary duty, nor does LTI otherwise argue *Dreiling*'s applicability.

LTI has also provided no citations to the record on this issue. For example, it does not cite the place in the record where the district court ruled on this argument. And

16

although it makes general statements such as "LTI asserted controverted material facts to show that [Long's] bad acts continued into 2014 and 2015," LTI does not tell this court where in the appellate record it may find those assertions or evidence to support them as would render the timing of Long's bad acts controverted material facts.

Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 35) requires that each issue in an appellant's brief contain "[t]he arguments and authorities relied on" and "must begin with citation to the appropriate standard of appellate review and a pinpoint reference to the location in the record on appeal where the issue was raised and ruled on." LTI has not complied with this rule and it does not explain why this court should apply *Dreiling*. "'Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority, is akin to failing to brief an issue.'" *In re T.S.*, 308 Kan. 306, 312-13, 419 P.3d 1159 (2018). Thus, LTI has not adequately briefed this issue and we consider the issue waived and abandoned.

As a final matter, Long points out the undisputed fact that Lanier agreed to move LTI's remaining customers to Elite in 2014, more than two years before *Lanier II* was filed. After that time, LTI had no original source of revenue and there was nothing to remit or account. So even if we reached LTI's substantive claim on this issue, it appears that LTI would suffer from the statute of limitations problems it has with its other claims.

Affirmed.